**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**


**JONATHAN E. TURNER,**

      **Plaintiff,**

v.                                                                                        **Case No. 8:08-cv-1722-T-TBM**

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

      **Defendant.**
_____/


**O R D E R**

The Plaintiff seeks judicial review of the denial of his claim for Social Security Supplemental Security Income payments. For the reasons set out herein, the decision is affirmed.


I.

Plaintiff was fifty-two years of age at the time of his administrative hearing in October 2007. He stands 6', 9" tall and weighed 245 pounds. Plaintiff has two and a half years of college education. His past relevant work was as a day laborer through labor pools. Plaintiff protectively applied for Supplemental Security Income benefits in October 2004, alleging disability as of December 31, 2000, by reason of severe pain, depression, high blood

pressure, arthritis, memory problems, memory lapse, headaches, and hearing voices. The Plaintiff's application was denied originally and on reconsideration.[1]

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in his own behalf. Additionally, a vocational expert was called by the ALJ.

In essence, Plaintiff testified that he is unable to work due to back problems, depression, nerve damage to his left (dominant) hand resulting in loss of strength and feeling, high blood pressure, headaches, and an inability to be around people. He has not worked on a continual basis for twenty years. He recently tried to change a woman's tire for twenty dollars, but could not even do that and re-injured his back in the process. Since 2000, his work history is basically from labor pools in which he has done "menial" work such as raking or construction clean-up. He will work for a day and then his back hurts such that he cannot work the rest of the week.

Plaintiff testified that he is currently homeless, living out of his car which is parked in the backyard of a church. The car does not work, and regardless, his driver's license was taken away two years ago for failure to pay child support. He takes a public bus for transportation.

---

[1] According to Plaintiff's memorandum, he filed a new application for Supplemental Security Income ("SSI") benefits in December 2007, subsequent to the ALJ's unfavorable decision of November 2007. On the December application, the Social Security Administration found the Plaintiff entitled to a period of disability and SSI benefits beginning December 1, 2007, and thus the period at issue in this claim is October 26, 2004, through November 30, 2007. (Doc. 19 at 2).

Plaintiff was first diagnosed with back problems at the age of twelve. Plaintiff attended college on a basketball scholarship in 1969, but left college in 1972 without receiving a degree. He testified he was unable to finish college because of retention problems. He stated that he was able to play basketball in college because his back was not as bad then, but clarified that his presence on the team was mostly for show because of his height, and by his account, he spent most games on the bench. Although it was recommended to him, Plaintiff never had surgery for his back problems because of the risks associated with the surgery.

Plaintiff had a previous injury claim arising out of a slip and fall accident. Plaintiff testified that his last medical treatment was with Dr. Haskins as a result of the fall. He has not been able to obtain treatment through the County since then.[2] He received a settlement from the claim, but testified that the attorneys and medical expenses took most of the money. Prior to his slip and fall, church members and a girlfriend would help him financially.

Plaintiff has undergone psychiatric treatment; he was told that he suffers from acute depression and schizophrenia. He was prescribed medication, but quit taking it because he could not tolerate it and it "messed" him up to where he could not function. He testified that he gets aggravated a lot, cannot tolerate people, and is depressed.

---

[2]According to his counsel, Plaintiff was receiving treatment through the Hillsborough County Healthcare Plan, but Plaintiff owed money to the Plan for procedures performed years ago. When Plaintiff received settlement money from the slip and fall, he failed to repay the money he owed and refused to sign a letter of protection and thus he was "cut off" from the Hillsborough County Healthcare Plan. (R. 460, 469).

3

As for his daily activities, Plaintiff testified that he goes to the soup kitchen and then takes public transportation to the University of South Florida ("USF") to watch movies on the computers in the library. When Plaintiff watches movies at USF, he only uses the mouse to log on. He does not need to type on the keyboard and does not use the computer to send emails or go on the internet. He does not socialize with anyone while there unless he is asking them for a cigarette. By his account, when he watches a movie, he is up and down. He will sit for a period, but then needs to stand up and walk or lean against a wall, and then he will sit down again. He cannot sit constantly.

Plaintiff testified that the nerves of his left hand were severed from a saw accident when he was working as a frame carpenter. He is left-hand dominant. His hand has permanent damage, and he is unable to grip or hold anything. He is sometimes able to pick things up, but it will usually fall right out of his hand due to lack of sensation and strength. He is unable to do repetitive type activities such as twisting or screwing things because of the lack of feeling in his hand. Plaintiff also experiences occasional pain in his chest which resulted from a gunshot wound to his chest. He also had a gunshot wound to his right arm, but denies any problems resulting from that. Plaintiff testified that he has extremely high blood pressure, but does not take medication for it because he cannot afford it. He suffers from headaches constantly as a result of the high blood pressure.

Plaintiff denied a past history of cocaine or alcohol abuse, testifying that he tried cocaine only once or twice and will drink beer only on occasion with friends. He testified that the last time he had marijuana was when he was a freshman in college. Plaintiff has used a

4

cane for five years because of numbness in his back, left leg, and feet, which would cause him to fall. Plaintiff testified he can walk one to one and a half blocks before his back and leg start acting up. He estimates he can stand for fifteen minutes before needing to sit down. (R. 461-81).

Next, the ALJ took testimony from Dr. Irvin Roth, a vocational expert ("VE"). He classified Plaintiff's former work as light to medium unskilled work Upon a hypothetical of an individual close to advanced age with some college education, capable of light exertional work with only occasional climbing, balancing, stooping, kneeling, crouching and crawling, but no climbing vertical ladders, scaffolds, ropes, or at unprotected heights, with moderate limitation for social functioning and in concentration, thus needing to avoid extended periods of detailed tasks and limited to carrying out simple routine instructions using simple independent judgment with simple changes in work setting, the VE opined that the only past work of the Plaintiff's that such individual could perform would be a flagger-type job. Further including the added limitation of no frequent interaction with the general public, the VE opined that such individual could perform other jobs available in the local and national economy as well, such as a bench assembler, inserting machine operator and folder, or copy machine operator. However, these jobs do not allow an individual to alternate stand/sit positions. Similarly, while being a flagger does not involve interaction with the public, this job also does not allow for a sit option. Accordingly, with the added limitation of a stand/sit option, the VE testified that such individual could perform such jobs as light level assemblers, inspectors, and packers. If this hypothetical individual could only occasionally use his

dominant hand for grasping and handling, the VE testified that such limitation would completely remove those jobs with a sit/stand option because those positions require the use of both hands frequently which the VE defined as between a half and two-thirds of the time. If the hypothetical individual would have a significant limitation to understand and remember even the most simplest tasks and instructions to the point where such individual would not be able to perform simple repetitive jobs in a consistent and satisfactory manner, the VE opined that such individual could not do any of the Plaintiff's past work or any job in the national economy. (R. 481-89).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By his decision of November 16, 2007, the ALJ determined that while Plaintiff has severe impairments related to scoliosis and lumbar spine degenerative disc disease with disc protrusions and some stenosis, and major depression with psychotic features and paranoid personality with a history of substance abuse, he nonetheless had the residual functional capacity to perform light exertional work,[3] with limitations for occasional climbing, balancing, stooping, kneeling, crouching and crawling, but no climbing vertical ladders,

---

[3] Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category may require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

6

scaffolds, ropes, or at unprotected heights. Upon this finding and the VE's testimony, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 11-23). The Appeals Council considered additional arguments by counsel and denied Plaintiff's request for review.

## II.

In order to be entitled to Supplemental Security Income payments a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to

the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The ALJ, in part, decided the Plaintiff's claim pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq*. These Regulations apply in cases where an individual's medical condition is severe enough to prevent them from returning to their former employment, but may not be severe enough to prevent them from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the Regulations and are commonly

referred to as "the grids." *Id.* at Part 404, Subpt. P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. *Id.* at § 404.1569. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only. *Id.* at § 404.1569a.

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The Commissioner failed to fully and fairly develop the record, and

(2) The Commissioner failed to adequately and properly evaluate or credit the Plaintiff's testimony pursuant to Social Security Ruling 96-7P.

Plaintiff first argues that the Commissioner failed to fully and fairly develop the record by failing to recontact Plaintiff's treating physician, Dr. Hafiz Rahman, M.D., regarding the validity of Plaintiff's psychological impairments. Although the ALJ acknowledged that Dr. Rahman was a treating physician whose opinion could be given controlling weight, the ALJ afforded no weight to his opinion because the ALJ was of the

9

belief that Plaintiff had completed Dr. Rahman's report (R. 146-52) which stated that Plaintiff was not able to sustain a full-time job. Rather than speculate on the matter, Dr. Rahman should have been contacted. Next, Plaintiff urges that the Commissioner should also have recontacted consultative examiner, Dr. R. Salari, M.D., regarding his statement that Plaintiff could not engage in any gainful employment pending further "investigation" for clarification of what that meant. Finally, Plaintiff urges that given the lack of treatment, which he could not afford, the ALJ should have ordered a post-hearing consultative evaluation to evaluate the Plaintiff's current mental condition. (Doc. 19 at 9-11).

In response, the Commissioner acknowledges that to the extent there were suspicions over who signed Dr. Rahman's report, there may be an ambiguity that would trigger the ALJ's duty to recontact the doctor. However, the failure to do so here is, at most, harmless error given that even if he had recontacted the doctor, he was free to discount his opinion and because the decision on disability is for the Commissioner to make. As to the argument that the ALJ should have recontacted Dr. Salari, the Commissioner responds that such obligation is only necessary where the doctor's report is inadequate or incomplete, and there is no evidence to support that the ALJ found Dr. Salari's report to be incomplete. Moreover, Plaintiff fails to demonstrate how the ALJ's actions prejudiced his claim and failed to show that the ALJ needed to do more to develop the record. In response to Plaintiff's assertion that the ALJ should have ordered a consultative examination to assess his current condition, the Commissioner notes that the Plaintiff never requested he be sent for another consultative

examination, and moreover, an ALJ is not required to order a consultative examination where the record contains sufficient evidence to support the ALJ's findings. (Doc. 21 at 6-10).

It is well-settled that the ALJ has a basic duty to develop a full and fair record.[4] *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). This obligation exists whether or not the claimant is represented by counsel. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). In light of this obligation, an ALJ must order a consultative examination when "such an evaluation is necessary for him to make an informed decision." *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988) (quoting *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984)); *see also Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). However, case law in this circuit requires the Plaintiff to show some prejudice before a remand to the Commissioner for further development is ordered. *See Graham*, 129 F.3d at 1423. In considering whether a remand is required, the court should be guided by whether there are evidentiary gaps in the record that result in unfairness or clear prejudice. *Id.*

Regarding the duty to recontact a medical source, the regulations prescribe that the Administration will seek clarification "when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.912(e).

---

[4]Nonetheless, it is the claimant's burden of proving that he is disabled and he is responsible for producing evidence in support of his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a), (c)).

At the outset, it is worth noting that Plaintiff's counsel made no request that the ALJ recontact any doctor for clarification, nor did he request that additional consultative work-up be made. While the ALJ is duty bound to develop a full and fair record, counsel surely is obliged to raise his objections first at the administrative level. Arguably, his failure to do so precludes the argument here. *See Alacare Home Health Servs., Inc. v. Sullivan*, 891 F.2d 850, 855 n. 5 (11th Cir. 1990) (general rule in this circuit is that "[a]n argument not raised in an administrative hearing cannot be raised on appeal") (citing *United States v. Tucker Truck Lines*, 344 U.S. 33, 35-36 (1952)); *see also Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (holding that, "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal"); *cf. Sims v. Apfel*, 530 U.S. 103, 105-07 (2000) (holding that a claimant does not waive judicial review of an issue by failing to raise it before the Appeals Council but explicitly stating that whether a claimant must exhaust issues before the ALJ was not before it). In any event, he makes no good showing of the need for further consultative examinations on this appeal.

Regarding, Dr. Rahman's statement finding Plaintiff disabled, it appears at pages 146-48 of the record. The balance of the records cited by the parties and the ALJ (R. 149-52), appear to relate to other individuals. In any event, I agree with the Plaintiff that it was improper for the ALJ to discount the opinion of this doctor on his suspicion that Plaintiff had filled out the forms. There is no evidentiary support for this conclusion and before such assertion was made, additional inquiry was both necessary and appropriate. Ultimately, however, the question is whether the ALJ was required to accept this doctor's conclusion that

12

Plaintiff was so paranoid that he was rendered disabled and could not sustain work activity for a full work week or even an eight-hour day. As the decision reflects, in addition to questioning who wrote the report, the ALJ cited other reasons for questioning the opinion. Thus, the ALJ also noted that the doctor's notes failed to reveal "the type of clinical and or laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness." Additionally, the ALJ noted that the Plaintiff had not required psychiatric treatment after a short period of treatment. Finally, the ALJ noted that the decision on disability is one reserved for the Commissioner. (R. 20).

The medical records from Dr. Rahman are limited. *See* (R. 248-50). It appears he saw Plaintiff on 3 or 4 occasions although his notes discuss only 3 visits. By the doctor's assessment, Plaintiff was depressed with psychotic features and paranoid. The doctor initially prescribed Lexapro, Risperdal, and Trazodone. In the last note of record, he prescribed Depakote, Remeron, and another medication. The notes reflect Plaintiff was anxious, nervous, and depressed, with low self-esteem and suffering from hallucinations. (R. 248). In the statement at issue, the doctor signed off on the opinions that Plaintiff was disabled because he was too paranoid to function in social situations. It was also indicated that the adverse effects from the medications precluded Plaintiff from any sustained activities. (R. 147).

Upon my consideration, accepting entirely that the opinions expressed in the assessment are those of Dr. Rahman, the ALJ stated adequate reasons for not giving them controlling weight. When the assessment is considered in light of the notes from this doctor, it appears that the same were based on Plaintiff's self reporting rather than clinical evidence.

13

At his hearing, Plaintiff testified that he stopped his psychiatric care because he felt like a guinea pig, and the numerous pills the doctor prescribed "messed" him up to where he could not function. Further, while Plaintiff complained that he did not like being around people and was depressed, the reason he could not work was related to his back pain. He made no claim of hallucinations or the need for the type of treatment provided by this doctor. On the contrary, he was fully cognizant of the treatment by this doctor and that the heavy medications he was being prescribed messed up his ability to function. As the Commissioner correctly urges, ultimately the determination on disability is left up to the Commissioner. Here, I am unconvinced that the ALJ was obliged to recontact this doctor before drawing his conclusions on the doctor's assessment even in light of his suspicions about who authored the report. In the end, it is apparent that it would have made no difference. The records submitted appear to be the whole of the doctor's reports. The reports themselves are not inconsistent and suggest diagnosis based wholly on Plaintiff's reports. As the ALJ found, the notes suggest very short-term treatment with psychotic medications which, by Plaintiff's own recognition, left him unable to function. The ALJ credited the diagnosis from the doctor but not the conclusion that Plaintiff was so paranoid that he could not operate in the work setting on a sustained basis.[5] Plaintiff did not claim otherwise at his hearing nor does he show otherwise on this appeal. Thus, no remand is required on this claim.

---

[5] Significantly, the ALJ credited Plaintiff with limitations in connection with his mental health. Plaintiff does not challenge the RFC findings by the ALJ nor otherwise demonstrate that he was more limited than as assessed.

As for the failure to recontact Dr. Salari for clarification, I again conclude that such was unnecessary. After reviewing Plaintiff's history and findings on physical exam, this doctor indicated his view that Plaintiff needed to see a neurosurgeon, have an updated MRI scan of the lumbar spine, and perhaps nerve conduction studies for the left upper extremity[6] and an evaluation by a psychiatrist regarding his depression and anti-social attitude. In conclusion, the doctor stated, "until this investigation is completed he is unable to engage in any gainful employment." (R. 291). By Plaintiff's contention this latter statement renders the report from this consulting doctor ambiguous. I disagree. The report reveals no conflict or ambiguity and otherwise contained all the information the doctor had to offer. In this doctor's view, additional studies were necessary to determine Plaintiff's true condition. A remand directing the ALJ to recontact this doctor for some type of clarification would serve no useful purpose.

To the extent that the Plaintiff also protests that the ALJ should not have discounted this doctor's assessment, he again demonstrates no error. As the decision reveals, the ALJ fully reviewed the report from this consulting examiner and fairly recounted his findings in the decision. (R. 17). The findings by this doctor are largely credited by the ALJ. As for the opinion evidence that Plaintiff could not work, the ALJ discounted the same on the basis that it was based on a single examination of the Plaintiff and was a qualified opinion suggesting that Plaintiff needed further work up. As a consulting examiner, the witness's opinions were

---

[6]In the body of his report, he noted that no results from MRI or CAT scans, nor any neurological consultation, had been provided for his consideration. (R. 289).

15

relevant but not entitled to special deference. Here, the ALJ, who was possessed of the other matters suggested to be necessary by this doctor, concluded that the opinion on disability was simply not fully supported. There is no error demonstrated in this.

On his second claim, Plaintiff urges that the Commissioner failed to properly evaluate and credit Plaintiff's subjective testimony. In particular, Plaintiff contends that the Commissioner failed to articulate adequate reasons for discrediting his testimony regarding his back pain and merely "cherry-picked" those instances in the medical record that supported the ALJ's decision. (Doc. 19 at 12-15).

The Commissioner responds that Plaintiff failed to provide objective or other evidence to support his subjective complaints, and the ALJ offered numerous reasons for finding Plaintiff's allegations not entirely credible. Specifically, Plaintiff's conservative treatment, the physical examinations and findings, Plaintiff's noncompliance with treatment and poor effort, and his daily activities supported the ALJ's findings on lack of credibility. (Doc. 21 at 12-17).

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v.*

16

*Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Id.*; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 .2d 1529, 1532 (11th Cir. 1991). The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case. *Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982). Thus, where credibility is a determinative factor, the ALJ must explicitly discredit the testimony or the implication must be so clear as to amount to a specific credibility finding. *Foote*, 67 F.3d at 1562. However, a reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale*, 831 F.2d at 1012.

As the decision reflects, the ALJ recognized and applied the Circuit's "pain standard." (R. 15-20). By the ALJ's review, the Plaintiff had a long history of scoliosis, degenerative disc disease in the lumbar spine, chronic lower back pain, left extremity weakness that had progressively worsened, and mental health issues which could reasonably be expected to produce Plaintiff's alleged symptoms. Nonetheless, the ALJ found Plaintiff's subjective complaints excessive in light of his daily regimen of visiting a local university to view DVDs, socializing with friends or at church, the medical evidence indicating mild scoliosis, degenerative disc disease with disc protrusions and some stenosis of the lumbar spine, relatively minor limitations in range of motion of the lumbar spine, notations that

17

Plaintiff was noncompliant with treatment and gave poor effort, and findings that his depression was secondary to the physical problems. (R. 19).

As noted, Plaintiff urges that the ALJ improperly "cherry-picked" the record and that the record supports a more severe condition in his back and mental state. He criticizes the ALJ for citing conservative care as a reason for discounting the Plaintiff's complaints because surgery had been suggested. He urges that the fact Plaintiff mentioned "friends" and "church" and had a daily routine of watching DVDs did not support the conclusions that he was more sociable than claimed and that such suggested a higher mental function. He urges the conclusion of lack of compliance as revealed in the record is ambiguous and should not have been cited.

Under the applicable standards, it is the role of the ALJ to evaluate and weigh the evidence and to draw conclusions therefrom, not this court. If the ALJ's conclusions are supported by substantial evidence, they are properly affirmed. Here, the record undeniably established impairments in Plaintiff's lower back. By Plaintiff's account, this was his disabling condition. According to his testimony, he had suffered the condition since age 12 and while he could do day labor, after one day's work, he was out of commission for the rest of the week due to pain. This was the type of subjective testimony at issue. By my consideration, the ALJ's review of the medical and other records was fair and complete, and his findings therefrom supported by substantial evidence. While Plaintiff is correct that Dr. Tanner described "severe" central canal stenosis with radicular symptoms and he recommended surgery (R. 178), as noted by the ALJ, Dr. Haskins, another treating doctor,

18

described "mild" scoliosis upon his initial examination. (R. 187).[7] Plaintiff's treatment by both doctors was conservative, with the full concurrence of Plaintiff who testified that he feared the risks of surgery. In my view, even if surgery was one potential course of treatment, the election of conservative care is not an inappropriate consideration of the actual level of Plaintiff's pain and subjective limitations. *See* 20 C.F.R. § 416.929(c)(3)(v); *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996). In the report on his consultative examination, Dr Salari noted "poor effort" on Plaintiff's part during his physical examination thus calling into question his results. (R. 290-91). The ALJ's conclusions concerning evidence of a higher level of mental functioning than as claimed by the Plaintiff also find some support in the record. Plaintiff admitted that he traveled each day to a soup kitchen for food and then he traveled by bus to a university library where he watched DVDs on a computer all day. While Plaintiff sought to minimize the significance of this activity, it does reflect on his mental state. This is especially so given the ALJ's other observations or findings. As the decision reflects, the ALJ also noted that Plaintiff's testimony at the hearing revealed that he was coherent, logical and responsive to the entire proceedings. Further, the review of the mental health record revealed there was no evidence of cognitive disturbances and his insight was intact. As for the ALJ's comment about Plaintiff's mention of "friends", such was not inappropriate in light of Plaintiff's claim that he cannot be around people. Here, the transcript reveals that Plaintiff testified to having a girlfriend and to drinking "a beer with the fellows every now and

---

[7]The findings related to Plaintiff's condition after his slip and fall are fairly set forth by the ALJ. (R. 18). Findings by Drs. Haskins and Tanner related to motor strength were essentially normal and sensory and range of motion studies showed only slight deficits, if any.

then" and to borrowing money from different people around the church where his car was parked. (R. 475). While he also claimed that he was not "socially apt" anymore, and such may be the case, these observations by the ALJ are relevant to the conclusion that Plaintiff was not as withdrawn from people as he claimed. In sum, the ALJ gave adequate, record-based reasons for discounting Plaintiff's pain complaints.

In the end, there is no doubt that Plaintiff had impairments in his lumbar spine that contributed to a painful existence. The issue was whether the pain was such that he was precluded from all work. On this application, I am obliged to conclude that the ALJ has adequately discounted the pain complaints and Plaintiff otherwise makes no showing that the RFC for a limited range of light work is in error.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 21st day of September 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record